2004 OK CIV APP 12

**FABSCO SHELL & TUBE LLC
and National American Ins.
Co., Petitioners,**

v.

**Michael Steve EUBANK, Zeeco, Inc., and
The Workers' Compensation Court,
Respondents.**

No. 98,414.

Court of Civil Appeals of Oklahoma,
Division No. 4.

Aug. 12, 2003.

Rehearing Denied Sept. 29, 2003.

Certiorari Dismissed Jan. 5, 2004.

John G. Barnhart, Layman, Padgett & Barnhart, Tulsa, OK, For Petitioners.

Gus Farrar, Tulsa, OK, For Respondent Eubank.

James Durant, Tulsa, OK, For Respondent Zeeco, Inc.

Opinion by KEITH RAPP, Judge.

¶ 1 Petitioners, Fabsco Shell & Tube LLC and its insurer (Employer) appeal a decision by the Workers' Compensation Court Three–Judge Panel (Panel) in favor of Michael Steve Eubank (Claimant) and his former employer, Zeeco, Inc. (Zeeco) awarding Claimant permanent partial disability (PPD) benefits for cumulative hearing loss. The Panel affirmed the trial judge's assessment of the entire responsibility for the benefits to Employer.

## BACKGROUND

¶ 2 Claimant sustained a hearing loss after long-term exposure resulting in PPD. The last exposure to the cause of the injury occurred while he was employed with Employer. He had worked for Employer for about a year and seven months. Prior to that he worked for Zeeco for just over three years. Prior to his employment with Zeeco he worked for a company named AGC for one year and prior to that he had worked for Employer.

¶ 3 Claimant's occupation as a fitter welder exposed him to industrial noise. He experienced progressive loss of hearing leading to the present claim. Medical reports in evidence reached conflicting conclusions as to the degree of hearing loss. However, none of the reports attributed the total hearing loss to the last exposure during employment with Employer. Two of the reports apportioned the loss among the last periods of employment.

¶ 4 Zeeco had been a party to the proceedings but was dismissed by the trial court over objection of Employer. Zeeco did not appeal that dismissal nor did it appeal any decision by the trial judge or the Panel. Thus, Zeeco's request for relief in this matter is denied.

¶ 5 The trial judge attributed the total responsibility for payment of benefits to Employer pursuant to statute. 85 O.S.2001, § 11(B)(5).[1] Petitioners appealed to the Panel, which affirmed. Employer appeals.

## STANDARD OF REVIEW

¶ 6 Employer's appeal presents questions of law. The appellate court has the plenary, independent and nondeferential authority to reexamine a trial court's legal rulings. *Neil Acquisition, L.L.C. v. Wingrod Investment Corp.*, 1996 OK 125, 932 P.2d 1100 n. 1. If an appeal asserts a violation of constitutional rights, the appellate court will exercise its own independent judgment, if it becomes necessary to determine the constitutional question. *Ranola Oil Co. v. Corporation Commission of Oklahoma*, 1988 OK 28, ¶ 7, 752 P.2d 1116, 1118. Matters involving legislative intent present questions of law which

---

1. The statute provides:

B. Liability of any person, firm, or corporation having an interest in the subject matter, employers and contracting employers, general or intermediate, for compensation under the Workers' Compensation Act, when other than the immediate employer of the injured employee, shall be as follows:

. . . .

5. Where compensation is payable for an injury resulting from cumulative trauma, the last employer in whose employment the employee was last injuriously exposed to the trauma during a period of at least ninety (90) days or more, and the insurance carrier, if any, on the risk when the employee was last so exposed under such employer, shall alone be liable therefor, without right to contribution from any prior employer or insurance carrier. If there is no employer in whose employment the employee was injuriously exposed to the trauma for a period of at least ninety (90) days, then the last employer in whose employment the employee was last injuriously exposed to the trauma and the insurance carrier, if any, on the risk when such employee was last so exposed under such employer, shall be liable therefor, with right to contribution from any prior employer or insurance carrier.

are examined independently and without deference to the trial court's ruling. *Salve Regina College v. Russell*, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); *Keizor v. Sand Springs Ry. Co.*, 1993 OK CIV APP 98, ¶ 5, 861 P.2d 326, 328.

## ANALYSIS AND REVIEW

### A. Constitutionality of 85 O.S.2001, § 11(B)(5)

■ ¶ 7 Employer's principal argument presented here asserts that Section 11(B)(5), the "last injurious exposure rule," violates constitutional guarantees of Equal Protection of Laws and Due Process because it sets up classifications of employers and treats them disparately all without rational basis or advancement of a legitimate state interest. Both sides agree that the statute sets up a classification of employers.[2]

■ ¶ 8 Employer acknowledges that its argument has not been accepted in a number of cases beginning with *Travelers Ins. Co. v. Cardillo*, 225 F.2d 137 (2nd Cir.1955). The cases upholding the rule reason that it satisfies two problems pertinent to exposure injuries. These are: (1) proof; and (2) assignment of responsibility. *In re Runft*, 303 Or. 493, 739 P.2d 12 (1987). Employer further acknowledges that the rational basis test applies.[3]

¶ 9 The Employer's assertion before the trial court is that neither of the premises for upholding the statute can be found to support a permissible state interest and thus must be rejected. The proof problem existed below, and Employer has not demonstrated that, as a general matter in other cumulative trauma cases, the proof problem is nonexis-

tent. The assignment of responsibility to the last employer satisfies a rational basis because it provides a definite measure of relief to the worker. *See Rivas*, 2000 OK 68 at ¶ 12, 12 P.3d at 456. The classification here is far less arbitrary than the classification upheld in *Rivas* and the rationale of *Rivas*, applied here, results in the statute being found to pass constitutional challenge.

¶ 10 This conclusion resolves Employer's claim that Zeeco should not have been dismissed from this action. The claim that Zeeco should bear a proportion of the claim is also resolved by this conclusion. Employer's assertion that Claimant's hearing loss is, in part, not work-related is not supported by the medical reports.

### B. Conflict Between Section 11(B)(5) and Other Provisions

¶ 11 Employer next asserts Section 11(B)(5) conflicts with other provisions of the Act. Specifically, Employer argues that:

1. Section 11(B)(5) permits impairment otherwise excluded by Section 22(7) pertaining to aggravation of a pre-existing disability or impairments and allowing only incremental benefits;

2. Section 11(B)(5) does not serve the goal of providing limited and certain monetary exposure to employers;

3. Section 11(B)(5) permits any claimant to avoid the notice and statute of limitations provisions of the Act; and

4. Section 11(B)(5) expands the liability of the insurer to time periods beyond that provided in the Act.

¶ 12 Review of this argument incorporates the rule that statutes are to be construed to

---

**2.** Subject to employment periods not involved here, the class consists of all employers who employ persons exposed to cumulative trauma. The classification then separates the last employer from the class and assigns it full responsibility for the claim. On the other hand, all workers sustaining cumulative trauma are treated the same.

**3.** Under the rational basis test, legislation may draw certain classifications among individuals or groups of individuals, if those classifications are not arbitrary and capricious and bear some reasonable or rational relationship to a permissible

public policy or goal. There must be relevance to the purpose for which the classification is made. Rational basis is the lowest standard of scrutiny applied in equal protection analysis and is used when the classification does not jeopardize the exercise of a fundamental right or make a classification based upon an inherently suspect characteristic. A strong presumption exists in favor of legislative enactments. The statute will be upheld unless it is "clearly, palpably, and plainly inconsistent with fundamental law." *Rivas v. Parkland Manor*, 2000 OK 68, ¶ 8, 12 P.3d 452, 456

achieve harmony with each other rather than conflict whenever possible. *Sharp v. Tulsa County Election Bd.*, 1994 OK 104, ¶ 11, 890 P.2d 836, 840.

### 1. Conflict With Section 22(7)[4]

¶ 13 The conflict contention was addressed and rejected in *Weyerhaeuser Co. v. Tri*, 117 Wash.2d 128, 814 P.2d 629 (1991). There the Court characterized the Washington equivalent of Section 22(7) as a "segregation of prior disabilities" provision. The Court distinguished those provisions from the "last exposure" rule. The Court reasoned that the "segregation of prior disabilities" dealt with the amount of award whereas the "last exposure" rule dealt with responsibility for the award. The Court noted that the Washington scheme did allow for apportionment in other instances so that the inference was that its legislature intentionally refused to provide for apportionment in the cumulative trauma, last exposure situation.

¶ 14 This Court finds that the *Weyerhaeuser Co.* decision is here persuasive. Consequently, this Court rejects the argument that the last exposure rule of Section 11(B)(5) conflicts with Section 22(7).

### 2. Conflict With Goals of Act

¶ 15 *Weyerhaeuser Co.* also addresses this argument concerning conflict with the goals of the Act. *Weyerhaeuser Co.*, 814 P.2d at 632–33. The Court observed that providing limited and certain monetary exposure to employers was one goal of the workers' compensation scheme, but not the only one. The "last exposure" rule does serve the goal of providing the injured worker a swift and sure remedy. Moreover, as the Court stated, the averages over time will spread through the employer class, so that even though a single instance may seem unfair where the employer is bearing a full responsibility, such is not the case when the entire work force and employer community is considered over time. Correction of any specific inequities was deferred to the legislature. Again, this Court finds the rationale of *Weyerhaeuser Co.* to be persuasive.

### 3. Avoidance of Notice and Limitations

¶ 16 Implicit in Employer's argument in this area is the assumption that the notice and limitation period begins on an awareness of injury date. Employer's argument fails to account for the fact that a cumulative trauma injury is a single injury for purposes of notice and limitations. *Southwest United Industries v. Polston*, 1998 OK 78, ¶ 7, 964 P.2d 210, 212. The date of last exposure applies. *Southwest United Industries*, 1998 OK 78 at ¶ 7, 964 P.2d at 212. Thus, no conflict exists in this category.

### 4. Expansion of Insurer Liability[5]

¶ 17 Employer's argument concerning liability expansion maintains that the insurer's liability is extended beyond the periods allowed for the pre-existing disability or impairment. The sum of all permanent partial disability awards, excluding awards against the Multiple Injury Trust Fund and awards for amputations, and surgeries, shall not exceed one hundred percent (100%) permanent partial disability for any individual. An individual may not receive more than five hundred twenty (520) weeks' compensation for permanent partial disability, but may receive other benefits under the Workers' Compensation Act if otherwise eligible as provided in the Workers' Compensation Act.

---

4. Section 22(7) of the Act provides:
(7) Previous Disability. The fact that an employee has suffered previous disability or impairment or received compensation therefor shall not preclude the employee from compensation for a later accidental personal injury or occupational disease; but in determining compensation for the later accidental personal injury or occupational disease the employee's average weekly wages shall be such sum as will reasonably represent the employee's earning capacity at the time of the later accidental personal injury or occupational disease. In the event there exists a previous impairment which produced permanent disability and the same is aggravated or accelerated by an accidental personal injury or occupational disease, compensation for permanent disability shall be only for such amount as was caused by such accidental personal injury or occupational disease and no additional compensation shall be

5. The facts do not involve a situation with a *single* employer, but with *successive insurers*, and whether contribution or apportionment should occur. This Court does not address that situation here.

specified in Sections 65.2 and 65.3.[6] These provisions relate to coverage and enforcement of the workers' compensation insurance.

¶ 18 The underlying argument is that the risk assumed or covered has not been compensated for in the premiums charge. Neither of these Sections purport to limit or prescribe the amount of premium that can be charged to compensate for the risk of having to compensate an injured worker who suffers a cumulative trauma injury and who becomes entitled to compensation during the period of employment covered by the insurance in force at the time. Thus, Employer has failed to demonstrate a conflict for which relief can be granted.

### 5. Conflict With Section 47.1[7]

¶ 19 Section 47.1 permits waiver of aggravation of condition compensation for pre-existing silicosis or asbestosis that may result from continuing employment in the same occupation. Employer argues, without authority, that the absence of a similar provision in Section 11(B)(5) creates an inequality

of treatment and inconsistency in the Act. Assuming, without deciding, that an inequity exists, the inequity falls on the shoulders of the worker more so than the employer and its insurer who are benefitted by the waiver.

¶ 20 Moreover, Employer has not demonstrated that the promotion of employment opportunities purpose of Section 47.1, or the apparent corresponding absence thereof for any other occupational disease or cumulative trauma situation, fails to meet the standard of the "rational basis" test as reviewed in *Rivas*. Thus, this Court finds no irreconcilable conflict in this category.

### SUMMARY AND CONCLUSION

¶ 21 The Employer's argument that Section 11(B)(5), the "last injurious exposure rule," violates constitutional guarantees of Equal Protection of Laws and Due Process because it sets up classifications of employers and treats them disparately all without rational basis or advancement of a legitimate state interest on analysis is not valid and must fail. Further, using the rational basis

6. Section 65.2 provides:

Every employer and every insurance carrier who schedules any employee as a person employed by the employer for the purpose of paying or collecting insurance premiums on a Worker's Compensation insurance policy or who pays, receives or collects any premiums upon any insurance policy covering the liability of such employer under the Worker's Compensation Law by reason of or upon the basis of the employment of any such employee shall be estopped to deny that such employee was employed by the employer in a hazardous employment subject to and covered by the Worker's Compensation Law if such person receives an accidental personal injury arising out of and in the course of his employment, during the period for which such premium was so received, regardless of the type of business in which the employer was engaged or the type of employment in which the employee was engaged at the time of such injury.

Section 65.3 provides:

Every contract of insurance issued by an insurance carrier for the purpose of insuring an employer against liability under the Worker's Compensation Act shall be conclusively presumed to be a contract for the benefit of each and every person upon whom insurance premiums are paid, collected, or whose employment is considered or used in determination of the amount of premium collected upon such policy for the payment of benefits as provided

by the Worker's Compensation Act regardless of the type of business in which the employer of such person is engaged or the type of work being performed by the employee at the time of any injury received by such employee arising out of and in the course of his employment, which contract may be enforced by such employee as the beneficiary thereof.

7. Section 47.1 provides:

Where an applicant for employment, though not actually disabled, is found to be affected by silicosis or asbestosis, he may, subject to the approval of the State Industrial Commission, be permitted to waive in writing full compensation for any aggravation of his condition that may result from his continuing in his hazardous occupation. In the event of total disablement as a result of the disease with which the employee was so affected, after such a waiver, compensation shall nevertheless be payable as herein elsewhere provided, but in no case for longer than one hundred (100) weeks or to exceed Two Thousand ($2,000.00) Dollars in the aggregate. A waiver so permitted shall remain effective, for the trade, occupation, process or employment for which executed, notwithstanding a change or changes of employer. The Commission shall make reasonable rules and regulations relative to the form, execution, filing or registration and public inspection of waivers or records thereof.

test, the statute is upheld. Additionally, examination of Employer's sundry claims that the provisions of Section 11(B)(5) are in conflict with other provisions of the Act and the purposes and goals of the Act are unfounded. This Court's review determines that Section 11(B)(5) does not present such conflicts. Therefore, the decision of the Three–Judge Panel is sustained.

¶ 22 SUSTAINED.

GOODMAN, P.J., and REIF, J., concur.